**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **REALEFLOW, LLC** | **CASE NO. 1:20-CV-01980** |
| Applicant, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **STEVEN J. MANRY, JR.,** *et al.*, | |
| Respondents. | **MEMORANDUM OF OPINION AND ORDER** |

Before the Court are Applicant Realeflow, LLC's Application to Confirm Arbitration Award (Doc. No. 1) and Respondents Steven Manry's and Christopher Goff's Motion to Vacate Arbitration Award (Doc. No. 11). For the reasons discussed below, Realeflow's Application to Confirm Arbitration Award is GRANTED and Manry's and Goff's Motion to Vacate Arbitration Award is DENIED.

**I.  Background**

    **A.  History of Dispute**

This dispute stems from arbitration proceedings between two competing real estate investment website developers. Applicant Realeflow, LLC ("Realeflow" or "Applicant") developed realeflow.com, a proprietary web-based software aimed at prospective real estate investors. (Doc. No. 11, PageID# 159; *see also* Doc. No. 16, PageID# 1014.) According to Realeflow, its software "substantially predates" Respondents' software in the real estate investment space. (Doc. No. 16, PageID# 1014.)

In exchange for using Realeflow's software, users must agree to be bound by the terms of Realeflow's End User License Agreement ("EULA"). (Doc. No. 11, PageID# 159.) The EULA contains several provisions relevant to the instant dispute:

> **2.4 Realeflow LLC intellectual property ownership and restrictions to product use.** Realeflow LLC shall retain all rights to proprietary application development, business and technical methodologies, implementation, business processes and all other aspects of Realeflow business, application(s) and services. Under no circumstances, will the Customer be permitted to use any Front or Back End Code to their advantage (or) the advantage of their partner company's (or) potential partner company's outside of the intended design and implementation for which the original service subscription agreement was executed. The technology and business methodologies are proprietary and the sole property of Realeflow LLC. Any technology or business replication of any aspect of the application or services provided used for the gain of the Customer or above mentioned business partners or for the use of any level of a competitive nature regarding these proprietary elements is strictly prohibited.
>
> **2.5 Terms and Conditions.** The undersigned Customer hereby knowingly and specifically agrees to comply with all requirements set forth by Realeflow LLC as to how Realeflow will be used including but not limited to the number of users, the method and manner in which Realeflow is accessed. It is expressly understood that Realeflow is the intellectual property of Realeflow LLC and any attempts to copy, duplicate, imitate, share or modify Realeflow will be treated as a patent copyright or trademark infringement.
>
> In each such instance of an infringement upon Realeflow LLC's patent, copyright or trademark on Realeflow shall bear liquidated damages in the amount of $25,000 per instance to be paid by the Customer to Realeflow LLC. . . . .

(Doc. No. 11-1, PageID# 179-80.) The EULA further specifies that it is governed by Ohio law and that "any and all disputes, controversies and claims" arising out of the EULA will be settled by arbitration. (*Id.* at PageID# 187.)

Respondents Steven J. Manry, Jr. and Christopher J. Goff ("Manry and Goff" or "Respondents") created their own real estate investment software, known as "REIPro." (Doc. No. 11, PageID# 159.) REIPro became first commercially available in July 2014. (*Id.*) According to

2

Realeflow, Respondents signed up for Realeflow accounts in early 2015. (Doc. No. 1, PageID# 2.) In the process of signing up for Realeflow accounts, Respondents clicked a checkbox, assenting to the terms of Realeflow's EULA. (Doc. No. 11, PageID# 160; *see also* Doc. No. 16, PageID# 1014.)

Realeflow contends that Respondents accessed Realeflow's software to copy and misappropriate various aspects of Realeflow's software to develop REIPro. (Doc. No. 1, PageID# 2.) Realeflow believes that REIPro featured "numerous substantial similarities to Realeflow." (*Id.*) Respondents maintain that they signed up for the Realeflow software to support "their separate business of purchasing and selling real estate properties," but concede that they also conducted "competitive intelligence" on Realeflow's software capabilities. (Doc. No. 11, PageID# 160.)

In September 2018, Realeflow, convinced that Respondents had copied Realeflow's own website design and layout, initiated an arbitration proceeding against Manry and Goff. (Doc. No. 16, PageID# 1013.) Realeflow alleged that Respondents violated its EULA by repeatedly accessing Realeflow to copy its software design features for their competitive benefit. (Doc. No. 11, PageID# 159; *see also* Doc. No. 16, PageID# 1014-15.)

After approximately a year and a half of written discovery, the Arbitrator and parties engaged in a three day, in-person evidentiary hearing from February 25 – 27, 2020. (Doc. No. 16, PageID# 1013.) The parties submitted hundreds of exhibits into evidence, presented competing expert testimonies, and, after the hearing concluded, submitted and exchanged initial post-hearing briefs on April 27, 2020, and reply post-hearing briefs on May 18, 2020. (*Id.*)

### B. The Arbitrator's Decision

After reviewing the exhibits, testimony, and post-hearing briefing from both parties, the Arbitrator awarded $1.75 million in liquidated damages to Realeflow on August 13, 2020.[1] (Doc. No. 6, PageID# 125.) The Arbitrator concluded that Realeflow invested substantial time and money into developing its web-based software. (*Id.* at PageID# 110-11.) The Arbitrator further concluded that there was "overwhelming circumstantial evidence" that Respondents upgraded their own software based on ideas that they copied from Realeflow's website. (*Id.* at PageID# 112.)

The Arbitrator then considered and rejected Respondents' argument that copyright law applied to the dispute. The Arbitrator disagreed with Respondents' attempt to "cast this dispute as one claiming copyright infringement," referring to Respondents' copyright infringement argument as a "straw-man position." (*Id.*) The Arbitrator concluded that § 2.4 of the EULA "sets forth a liability standard that is significantly broader than copyright law." (*Id.*) She further noted that the Respondents failed to address either § 2.4 or the first paragraph of § 2.5, which built on § 2.4's broad liability standard. (*Id.*) According to the Arbitrator, the "combined legal effects" of §§ 2.4 and 2.5 "are (1) any attempt to copy, duplicate, imitate, share or modify any aspect of the Realeflow software is to be *treated under the contract as a wrong on the level of a* patent, copyright, or trademark infringement and (2) shall be subject to the specified liquidated damages multiplier." (*Id.* at PageID# 113.) The Arbitrator further concluded that §§ 2.4 and 2.5 "plainly do not mean, as Respondents urge, that Claimant Realeflow must establish statutory copyright infringement before it can prove liability under the EULA." (*Id.*)

---

[1] The Arbitrator also awarded Realeflow $42,555.69 in American Arbitration Association (AAA) administrative fees and expenses and Arbitrator compensation. (Doc. No. 11, PageID# 161; Doc. No. 16, PageID# 1015.) Respondents do not contest the award of these fees. (Doc. No. 11, PageID# 161.)

4

The Arbitrator concluded that Respondents assented to the terms of Realeflow's EULA and were therefore on notice that the EULA prohibited them from copying, duplicating, imitating, sharing, or modifying Realeflow.  (*Id.* at PageID# 114-16.)  Ultimately, the Arbitrator concluded that Respondents replicated 70 discrete aspects of Realeflow's website on their own competing website and that each of these 70 replicated aspects was a prohibited "instance" of contractual "infringement" under the EULA.  (*Id.* at PageID# 122-24.)  The Arbitrator multiplied these 70 instances by the $25,000 per instance liquidated damages multiplier to arrive at a total liquidated damages award of $1.75 million.  (*Id.*)

### C. Procedural Posture

Realeflow filed its Application to Confirm Arbitration Award on September 2, 2020.  (Doc. No. 1.)  Respondents filed their Motion to Vacate Arbitration Award on November 13, 2020, which the Applicant opposed on December 14, 2020.  (Doc. Nos. 11, 16.)  Respondents filed a Reply In Support of their Motion on January 7, 2021.  (Doc. No. 18.)  Thus, Respondents' Motion is ripe and ready for resolution.

## II.  Standard of Review

The Court's review of arbitration awards is "one of the narrowest standards of judicial review in all of American jurisprudence."  *Lattimer-Stevens Co. v. United Steelworkers of America, AFL–CIO, Dist. 27, Sub–Dist. 5*, 913 F.2d 1166, 1169 (6th Cir. 1990).  Under the Federal Arbitration Act,

> there is a presumption that an arbitration award will be confirmed.  *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998).  Courts have only a limited role in reviewing arbitration decisions.  A decision may be vacated if the arbitrators 'manifestly disregarded the law'.  *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) . . . ; *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)."

5

*Viconsi v. Lehman Bros., Inc.*, No. 1:02-cv-382, 2006 WL 290520, at *1 (N.D. Ohio Feb. 7, 2006).

A decision may be vacated if the arbitrator manifestly disregarded the law[2]:

> Although the parties have bargained for a resolution by way of arbitration, a blatant disregard of the applicable rule of law will not be tolerated. Even so, up to that point they must abide by the attributes of the process upon which they have agreed.
>
> This court has emphasized that manifest disregard of the law is a very narrow standard of review. *Anaconda Co. v. District Lodge No. 27*, 693 F.2d 35 (6th Cir. 1982). A mere error in interpretation or application of the law is insufficient. *Anaconda*, 693 F.2d at 37-38. Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.
>
> . . . If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside. *Storer Broadcasting Co. v. American Fed'n of Television and Radio Artists*, 600 F.2d 45 (6th Cir.1979); *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir.1992), *cert. denied*, 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993).

*Jaros*, 70 F.3d at 421.

### III. Analysis

Manry and Goff argue that the award should be vacated because the Arbitrator's decision amounted to a manifest disregard of the law when the Arbitrator disregarded the plain language of § 2.5 of the EULA and refused to apply well-established principles of copyright law. (Doc. No. 11, PageID# 163-64.) The Court disagrees. The Court concludes that the plain language of the EULA

---

[2] In addition to manifest disregard of the law, 9 U.S.C. § 10 (a) sets forth four statutory grounds for vacating arbitration awards: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." In this case, Respondents appear to rely only on manifest disregard of the law.

does not require Realeflow to prove copyright infringement to establish a breach of contract. Therefore, the Arbitrator did not manifestly disregard the law when she declined to apply well-established principles of copyright law. Accordingly, the Court concludes that Respondents fail to prove that the Arbitrator displayed manifest disregard of the law. *See Federated Dept. Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990).

As set forth above, manifest disregard of the law "is not an easy standard to meet" because mere error in the arbitrator's interpretation or application of the law is insufficient. *Marshall v. SSC Nashville Operating Co., LLC*, 686 Fed. App'x 348, 353 (6th Cir. 2017) (citing *Jaros*, 70 F.3d at 421). Rather, the arbitrator's decision "must fly in the face of established legal precedent" for the Court to find manifest disregard of the law. *Id.* An arbitrator acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id.* "Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 n. 3 (6th Cir. 1996)).

Respondents argue that the Arbitrator disregarded the plain meaning of § 2.5 of the EULA. Respondents interpret § 2.5 to require Realeflow to establish a copyright infringement against its intellectual property under the well-established principles of copyright law to establish a breach of contract claim under the EULA. (Doc. No. 11, PageID# 165.) According to Respondents' interpretation, then, the Arbitrator manifestly disregarded the law when she failed to determine whether Respondents' 70 instances of copying rose to the level of statutory copyright infringement. (*Id.*) Respondents argue that under the plain language of the EULA, the correct analysis "of what

7

constitutes an 'instance' of copyright infringement" for calculating liquidated damages "should have commenced with an acknowledgement of the applicable copyright infringement test, followed by use of that test to determine what qualifies as an 'instance' under Section 2.5 of the EULA." (*Id.* at PageID# 167.) Respondents argue that the applicable copyright infringement test has two prongs: first, the Arbitrator should have determined whether Realeflow owned a valid copyright in the work at issue, and, second, whether Respondents copied *protectable* elements of Realeflow's work. (*Id.*) Respondents argue that if the Arbitrator had applied this analysis, the Arbitrator would have determined that none of the 70 instances of copying were instances of copyright infringement because none of these 70 instances involved copyrightable elements. (*Id.* at PageID# 167-68.) According to Respondents, under their proposed analysis, the Arbitrator would have calculated the liquidated damages to be no more than $100,000 for four webpages whose overall designs mimicked Realeflow's designs. (*Id.* at PageID# 168.)

However, Respondents' arguments disregard the plain language of §§ 2.4 and 2.5 of the EULA. "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted); *see Ohio Historical Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 345 (Ohio Ct. App. 7th Dist. 1989). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Savedoff,* 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)); *see United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 2nd Dist. 1998). "The Court must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and

obligations of the parties if it is ambiguous."[3] *Airlink Commc'ns, Inc. v. Owl Wireless, LLC*, No. 3:10-cv-2296, 2011 WL 4376123 at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted).

Construing the plain language of §§ 2.4 and 2.5, the Court finds that the EULA does not require Realeflow to establish that Respondents engaged in statutory copyright infringement to prove that Respondents breached the EULA. Accordingly, statutory copyright law does not apply to the instant dispute. A reading of the plain language of the provision that "any attempt to copy . . . Realeflow . . . will be treated as a . . . copyright infringement" indicates that any act or effort by a customer to copy Realeflow will be considered to be a "copyright infringement" under the terms of the EULA. (Doc. No. 11-1, PageID# 180.) In other words, the plain language of § 2.5 defines a "copyright infringement" as any instance in which a customer copies Realeflow.

§ 2.5 further provides in relevant part that "[i]n each such instance of an infringement upon Realeflow LLC's . . . copyright . . . on Realeflow shall bear liquidated damages in the amount of $25,000 per instance . . . ." (*Id.*) In this sentence, the word "instance" refers to the previous paragraph's expansive definition of "copyright infringement" under the EULA. (*Id.*) Reading these two paragraphs together, § 2.5 unambiguously provides that Realeflow will treat a customer's attempt to copy Realeflow as a "copyright infringement" under the EULA, and each instance of such an infringement is a breach of the EULA, which is subject to liquidated damages in the amount of $25,000 per instance. (*Id.*)

---

[3] "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 10th Dist. 2003) (citation omitted*); see Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009).

Respondents' insistence that § 2.5 requires Realeflow to prove a "copyright infringement" under the well-established principles of copyright law ignores the plain meaning of the phrase "*will be treated as* a . . . copyright infringement." (Doc. No. 11, PageID# 180, emphasis added.) Respondents' interpretation of § 2.5 impermissibly attempts to replace "will be treated as" with "*must be proven as* a . . . copyright infringement." The plain language does not support such an interpretation. The phrase "*will be treated as* a . . . copyright infringement" unambiguously presumes that an act of copying Realeflow *is* a "copyright infringement" under the terms of the EULA. § 2.5 further unambiguously provides that any such instance of "copyright infringement"—as that term is used in the EULA—is subject to liquidated damages of $25,000 per instance.

There is no doubt that § 2.5 offers far broader protection to Realeflow against its customers' acts of copying than statutory copyright law otherwise provides Realeflow against the general public's acts of copying. Respondents are correct that, under statutory copyright law, not all copying is copyright infringement. (Doc. No. 11, PageID# 168.) Indeed, in her decision, the Arbitrator observed that this dispute presented an "interesting question as to whether a contract, more specifically, a click-through web site agreement, may assign liability and damages for misappropriation of intellectual property that, absent the agreement, could be argued to be in the public domain." (Doc. No. 6, PageID# 113.) The Arbitrator concluded that, according to her review of Realeflow's cited cases[4], a click-through agreement may provide broader protections than those afforded by copyright law. (*Id.*, citing *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1326-27 (Fed. Cir. 2003).) The Arbitrator also noted that Respondents cited no cases to the contrary. (*Id.*) Based

---

[4] Realeflow cited two cases in its post-hearing reply brief to the Arbitrator: *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003) and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996). (*See* Doc. No. 16-5, PageID# 1816.) Realeflow cites the same cases again in its Opposition to Respondents' Motion. (*See* Doc. No. 16, PageID# 1021-22.)

on the Court's review of Realeflow's cases, the Court agrees that the Arbitrator's conclusion was appropriate. *See Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1325-27 (Fed. Cir. 2003); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454-55 (7th Cir. 1996). Both cases support the Arbitrator's conclusion that a user agreement may provide broader protection than under copyright law and assign liability and damages for misappropriation of intellectual property that, absent the user agreement, "could be argued to be in the public domain." (Doc. No. 6, PageID# 113.) Additionally, Respondents again offer no cases to the contrary, further bolstering the Court's conclusion that the Arbitrator's decision was appropriate.[5]

Moreover, the plain language of § 2.5 sets out that *any* copying is to be treated as though it *is* copyright infringement. § 2.5 does not restrict its applicability only to instances in which a misappropriated element is copyrightable under statutory copyright law. The Court may not read such a requirement into § 2.5's plain language. Accordingly, the Court concludes that statutory copyright law does not apply to the instant breach of contract dispute.

The plain language of § 2.4 further bolsters the Court's conclusion that statutory copyright law does not apply here. Under Ohio law, a contract "must be read as a whole, and [it] must be interpreted in such a manner as to give effect to every provision." *Prudential Ins. Co. of Am. v. Corp. Circle Ltd.*, 658 N.E.2d 1066, 1069 (Ohio Ct. App. 8th Dist. 1995); *see also Westfield Ins. Co. v.*

---

[5] Respondents' argument in footnote 2 that *Bowers* is inapplicable because it addressed preemption under copyright law is not persuasive. (Doc. No. 11, PageID# 170.) The *Bowers* court considered whether a "shrink-wrap" user agreement could prohibit "reverse engineering" of software, a practice permitted under certain exemptions of the Copyright Act. *Bowers*, 320 F.3d at 1325-26. The court concluded that applicable case law indicated that the First Circuit "would find that private parties are free to contractually forego the limited ability to reverse engineer a software product under the exemptions of the Copyright Act." *Bowers*, 320 F.3d at 1325-26. The court concluded that the plain language of the contract "broadly prohibit[ed] any 'reverse engineering' of the subject matter covered by the shrink-wrap agreement" and that "[t]he shrink-wrap agreements in this case are far broader than the protection afforded by copyright law." *Id.* at 1326. Thus, *Bowers* is relevant to the extent that *Bowers*, like the instant dispute, involved a user agreement in which the parties agreed to a prohibition of behavior that may otherwise be permissible under statutory copyright law.

11

*Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003).  The Court agrees with Realeflow's argument that Respondents' interpretation of § 2.5 as requiring Realeflow to prove copyright infringement before it can establish a breach under the EULA contravenes § 2.4.  (Doc. No. 16, PageID# 1019.) § 2.4 prohibits customers from replicating any aspect of Realeflow's proprietary intellectual property for customers' competitive use.  (*Id.*)  § 2.4's prohibition is not limited only to copyrightable material.  (*Id.*)  § 2.4 clearly prohibits "*any* technology or business replication of *any* aspect of the application or services provided." (*Id.*, emphasis added.)  The language plainly does not limit the prohibition to certain instances of copying.  If Realeflow was required to establish that every copying attempt rose to the level of statutory copyright infringement, then § 2.4's prohibition of *any* replication of Realeflow's proprietary software would be nullified because, as Respondents note, not all copying rises to the level of statutory copyright infringement.  The Court may not read the EULA in such a way that nullifies § 2.4's complete prohibition on *any* replication of Realeflow's proprietary intellectual property.  Instead, the Court agrees with Realeflow's interpretation that § 2.4 prohibits any replication of Realeflow's proprietary intellectual property, irrespective of copyrightable status, and that § 2.5 sets out a mechanism by which instances of such prohibited copying will be treated as "copyright infringement" under the EULA and subject to liquidated damages.  This reading gives effect to both provisions. *Prudential*, 658 N.E.2d at 1069.

Because the Court concludes that the plain language of the EULA does not require Realeflow to prove statutory copyright infringement to establish a breach of the EULA, the Court concludes that the Arbitrator did not manifestly disregard the law when she declined to apply copyright law in a dispute to which it was not relevant.  Accordingly, because the Arbitrator did not manifestly disregard the law when she declined to apply copyright law, the Court need not address Respondents' remaining

arguments, as they are all derived from Respondents' assertion that copyright law applies to their 70 instances of copying.

The Arbitrator construed the plain language of the EULA in concluding that Respondents copied Realeflow's proprietary software in 70 discrete instances and that Respondents are subject to § 2.5's liquidated damages provision 70 times over. (Doc. No. 6, PageID# 121-22.) Because Respondents and Realeflow "agreed to have their disputes settled by an arbitrator, 'it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Hardy Indus. Tech., LLC v. BJB, LLC*, No. 1:12-cv-3097, 2016 WL 7325152, at *7 (N.D. Ohio Dec. 16, 2016) (quoting *United Paperworkers*, 484 U.S. at 37-38); *see also Jaros*, 70 F.3d at 421 ("Yet even a misapplication of well defined and explicit legal principles does not constitute manifest disregard."). Respondents fail to establish that the Arbitrator manifestly disregarded the law.[6]

---

[6] It is unclear whether Respondents explicitly allege that the Arbitrator refused to hear evidence pertinent and material to the controversy. Respondents cite briefly to 9 U.S.C. § 10(a) at the outset of their Motion and suggest that the Arbitrator's characterization of Respondents' copyright arguments as "inapposite" "appears to be a refusal" to hear evidence pertinent and material to the controversy. (Doc. No. 11, PageID# 164, 166.) The Court finds to the extent that the Respondents argue that the Arbitrator refused to "hear evidence pertinent and material to the controversy," this argument is not persuasive. The Arbitrator's decision shows that the Arbitrator considered Respondents' arguments with respect to copyright infringement and disagreed. For example, the Arbitrator observes in a footnote that she "disagrees that the language of the EULA has such a [copyright infringement] requirement and notes that Respondents' quotation from the EULA is partial and, therefore, not reflective of its meaning." (Doc. No. 6, PageID# 110.) The Arbitrator discusses Respondents' copyright law arguments again in her analysis of the plain language of §§ 2.4 and 2.5 a few pages later. (*Id.* at PageID# 112.) Thus, the Court is convinced that the Arbitrator's decision demonstrates that Respondents presented their copyright arguments and that the Arbitrator considered—and rejected—them.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Respondents' Motion to Vacate (Doc. No. 11) and CONFIRMS the arbitration award as sought by Applicant (Doc. No. 1).

**IT IS SO ORDERED.**

Date: March 8, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE